morning your honor attorney paul blake appearing on behalf of appellate mr brown via telephone i'm sorry i don't i don't think i heard the response very good thank you your honor your honor i am pleased to be able to speak to you about mr brown's situation i would first like to point to the unassailable fact that officer whining had been directed by motel staff to a different location and there was a suspicion that he was there to follow up on some activity namely transients possibly urinating possibly a white individual and so as he's proceeding into this parking lot he happens to encounter my client and another gentleman who happened to be white sitting on a low wall and there was absolutely nothing going on the officer stops and the very first thing out of his mouth is that is there a drug deal going on and once you accept that fact the officer had stated his determination to find something and proceeded to do so and i disagree with my lurid colleague that this was a voluntary or consensual contact because of the of the sequence of events that proceeded from there mr brown was singled out simply because he had made an alleged movement and you from the moment he was he had contacted the two individuals engaged in this initial dialogue so just walking of the officer walking up and starting a conversation that's a seizure well in this particular case you have the stated intention of what was in this particular officer's head he was determined to find something we don't determine the seizure we don't determine a seizure by what's objectively in the officer's head we would look at what a reasonable person would would think whether they were free to leave isn't that the test i submit that i think when you have objective evidence of the officer's stated intention and he lets us all know as soon as hey there's a drug deal i there's a drug deal going down here guys and from that point on uh i i think mr brown and uh the other gentlemen and certainly mr brown would feel objectively not able to leave and so he was seized from that point and then of course for the officer's benefit there was this alleged movement which i would again argue did not present any threat or indicate anything that was going on was even remotely illegal for the officer to take steps he did there was no seizure at that point i mean no seizure at that at that juncture um but at some point so let's suppose that there was no carry stop um until um the officer um pocket um i'm sure that um is there still a problem here i.e that he went into his pocket and pat him down to see if there was a weapon well i i here here's where i i think i i'm seeing it from a certain way i am an advocate yes one actually the best you're looking at it in a way that is not the best advocacy for your client uh you're taking the hard route instead of the easy route i understand i i i uh i appreciate that very much but once uh he has mr brown stand up he certainly sees from that that point on if if it wasn't already demonstrably uh the officer's intention he was certainly see but once he uh stood mr brown up and then began the pat down and search and everything from that do a pat down um well he was certainly already searching you can argue if he was searching for a weapon to uh to uh for officer safety reasons as we always frequently hear but he then goes into the pocket put his hands directly in his pocket right he did he did they do that yes yes he certainly did do that he's can you do a violation of the fourth amendment to do that i yes i believe certainly by that point we we have a clear violation and that there was no probable cause no objective issue with respect to officer safety he's already stood him up and is already proceeding to go through his pockets uh and council hold on just a minute because i'll go back to the question that was asked actually are you saying to the court now that there was a pat down before he put his hands in pocket uh at one point the officer does address and saying that uh he references counsel my question is rather simple are you saying that there was a pat down before he put his hands in the pocket no uh that's that's not that's not what happened but i was trying to that's that's all right counsel that you've answered my question thank you for doing okay all right i'm sorry what's your response to the government's reliance on the hill case as authorizing the officer to go straight into the pocket without the pat down i i don't again speaking as an advocate i don't find that persuasive simply based on all of the facts that we have and the government has helpfully provided the the the footage and you know you're you're seeing uh him being stood up there's an immediate search because of some alleged movement and and there's a complete uh inventory search almost right there he's pulling out uh you'll see the officer pulling out lighter uh cash from a couple of different parts of his clothing and of course the uh the the matter at issue here this alleged uh heroin so all of that's going on and i disagree totally that that is helpful to the government's case or to helping the our this court and understanding the sequence of events thank you for your time uh a minute your honor a minute your honor if i may go ahead this is the problem with a phone appearance we can't tell what you're doing every so often there's just a stop but i don't know what whether you're finished you're not finished what are you doing i'm i'm so sorry uh yes i appreciate that well uh in essence then i i would just in turn my remarks to uh judge san martino's decision uh with respect to our rule 2029 i believe that there was certainly sufficient facts as demonstrated and uh that the court should have granted our our motion for rule 29 and i think that that should have been granted at that point in time and i think i'll stop here and i will reserve um two minutes to uh to respond if i may good morning your honors may it please the court counsel counsel this is judge baldock and i want you to kind of go into what judge collins asked how does the hill case help you as much as you claim that it does hill case helps us because we're not disputing that there was no initial pat down here but hill says in as many words that terry is not limited to a pat down it uses the the phrase any limited intrusion reasonably designed to find weapons and i i take some issue with my uh opponent's characterization of the record at this point it's not that this officer stands the defendant up and immediately rummages through his pockets there's no question terry says the purpose of the frisk or the search that it authorizes is not to get evidence of crime it's to ensure officer safety the problem for you though is the sibron case because sibron says right on page 65 and faults the officer in that case for doing precisely what the officer did in this case which is going forward and going straight into the pocket it says in this case with no attempt at an initial limited exploration for arms patrolman martin thrust his hand into sibron's pocket and took from him envelopes of heroin the search was not reasonably limited in scope to the accomplishment of the only goal which might conceivably have justified its inception has that been overruled oh not not at all your honor and i am familiar well then isn't it controlling well i would respectfully disagree on the facts your honor there's no what sibron says in at least four different points was that the officer there never once claimed to be in fear for his safety the only thing that that's in there that's in the alternative holding correct there were actually two alternative holdings and i understand you know that there's a holding that ends on page 64 but then you go on to the next page and the court says even assuming our window that there were adequate grounds to search and then goes on and says there's a scope problem that's the part of that is a problem for you and and how do you get around it i do well you know i i'll acknowledge it's it's not an easy thing but what i'm saying here is it's supposed to be totality of the circumstances the reasonableness of the situation the officer in sibron just goes right into a pocket pulls out a glassine envelope that can't possibly have a weapon in it in this case the he doesn't just reach first of all it's pretty hard to pull out a gun with an eviction out of a pocket but second of all um the um he doesn't see a bulge or any reason to think there's something and he only needed to put his hands on it and he didn't well terry says you do not have to be absolutely certain a weapon is present you just need facts that would warrant a reasonably prudent in order to do a limited action in order to do a protected interior as well not in order to put your hands in somebody's pocket right but here you know even before that even if there wasn't a technical pat down you at least had an effort to make it a constructive one the officer you know what terry's aimed at is a general rummaging this officer he just is focused on that right pocket he specifically asked the defendant what's in your pocket and defense says oh i'm not quite sure which is somewhat of a suspicious answer i mean he gives the defendant a chance to explain what's going on this court has other precedent that says we give deference to officers on the scene well we know that this officer arrived um first thing he said was is there a drug deal so he was trying to find out whether there was a drug deal right he did but you know he definitely had that suspicion you know i know my opponent says those are the first words out of his mouth that's not true that comes in one minute and 40 seconds in the first thing he says is hey howdy what's going on we're responding to a call that they saw a transient you know loitering and urinating so it wasn't like that this would this happen all at once and if anything you know the officer's attention is focused more on the other individual there who was mr barlett who had obvious track marks on his arms who admitted a history of heroin use who admitted he was on bond admitted he just got out of jail he's got an unopened tool right next to him which this officer says in his 23 years of experience is the kind of common thing that is bartered for drugs and then you know this seven minute and 45th second you see this movement but even assuming that he had cause to be worried and to be worried about that pocket that there might be a weapon there wouldn't a pat down of the pocket have been sufficient to dispel that concern i mean not necessarily you know they he was specifically asked that at the evidentiary he said i don't know how that would have made you know he had a response that indicated he didn't believe that if you can see from the video that these this defendant he had his pants were very baggy i mean he asked him what's in that pocket that the defendant gives him a very suspicious answer almost a non-sequitur i don't know i mean pill says you know any interior itself any reasonably limited intrusion and the evil that that rule is after is a general rummaging and i know my opponent he characterized that is this you see the officer he doesn't go in the left movement he doesn't fiddle around with his hand in one move he pulls out something we know it had a net weight of about 86 grams that's consistent with what a pocket knife or a small switchblade could be well but if he did the pad down and he was not you know uh he wasn't assured that it was pocket and zibron doesn't say anything to the contrary um but the problem is he didn't go through that step he just went straight and did the more intrusive search no again i know it's not something we see very often but i mean it's interesting when you look at footnote 13 of terry terry talks about a pat down being extremely intrusive you touch people's armpits their groin you're right there i mean this was objectively a very it was almost instantaneous it was one fluid moment the officer says i'm gonna check he lets him know it's coming after giving an opportunity to explain it and hill is you know hill has not been overruled it this circuit does not have a rule about he pulled it up because he saw something he didn't feel it but he saw something that indicated that that was was intrusive nothing pertrusive here right i mean i don't yeah the bag wasn't making any kind of visible we're not relying on plain touch or plain feel right you know our position is that you know what my understanding is that he did see that there was something popping out under his shirt this case or are we talking about another case no yes yes hill hill was the bank robbery and he did see he did see a bulge in that case yes and that's the case you're relying on yes well those were the facts there but what we're relying on more importantly is the law of hill hill is you know this officer i mean if you talk about good faith reliance hill says it's not limited to a pat down those were the facts of hill obviously if we had facts like that here it would be a better case for us but i don't know that that's necessarily you know but how did hill how did hill distinguish sibron and which side of the line do you fall on well hill distinguished sibron exactly the way i was trying as i recall right here they said pretty much in sibron there was um no facts leading to reasonable suspicion that defendant was armed right so that's the first holding that ends on page 64 so are we to read hill is saying that we can throw out the other part of sibron as as dicta we don't need to pay any attention to that no i don't think so but you know that the court in hill didn't feel that that moved uh the ball in that case well the other thing they said about it is that it was a pocket search case and this wasn't a pocket search case in hill that was the second thing they said right not on the right side of that distinction not not with hill but you know i i decided another case i believe it's called hoffman i mean pocket search cases are not frequent all we're saying is that from this presumably because the officers know not to do them that could be but i don't know how many cases have an officer who's got an unfolding situation where a defendant leans back uses literally moves his index finger into his right pocket after having not four minutes had gone by while they were while they were waiting the warrant check mr brown was comfortable enough to have a one minute phone call with somebody right in front of the police and then suddenly while this officer is talking to mr bartlett i.e when it looks like his attention is not on the defendant he makes this furtive movement and after he's heard the officer call in for a record search i mean if you know those facts not even remotely close in sibron and i think sibron has to be read in relation to those facts where that officer never once on the record and sibron points out four separate times that there was no fear for safety and at the very least i would still say this case is distinguishable from sibron because glassine envelope i had to look that up i remember those things now those are you know little business envelopes there's nothing that's going to be in that whereas a bag i mean but it was that was a reasonably limited intrusion designed to find out what it is squarely within the the language of terry that is our position so um i think their time is up so thank you very much thank you your honor um mr blake yes thank you very briefly your honor um i appreciate the court's comments and i certainly note that i believe sibron uh is is very influential in this setting but in response to my colleague's comments i i don't think there's any doubt about where the officer was going once he had contacted these individuals whether it was very shortly thereafter and of course there was no path down uh and there was no other articulable reason why uh the sibron it's either overruled and on that i'll submit thank you very much thank you for your argument the case of united states versus brown submitted and we will change it all right thank you very much
judges: Baldock, Berzon, Collins